Rankin, et al. v. Rankin, et al.

JACOB RANKIN, *et al.*, Appellants, *vs.* ELIZABETH S. RANKIN, *et al.*, Respondents.

1. *Wills, suit contesting—Evidence—Rebuttal—Additional testimony in corroboration inadmissible, when.*—In suit contesting the validity of a will, after, defendants have made out their *prima facie* case in favor of the will, and plaintiffs have introduced their testimony *contra*, and the proofs have been offered by defendants in rebuttal, plaintiffs should not be permitted to afterwards bring in additional testimony in corroboration of that already offered; and this rule should be enforced especially when the testimony is in the nature of opinions based upon observation, or those of experts on hypothetical cases, as, where the sanity of the testator is in issue.

2. *Evidence, introduction of, discretion of court as to.*—The introduction of testimony out of its order is, as a general rule, a matter resting largely in the discretion of the court.

3. *Wills—Undue influence of wife.*—The mere fact that a will is changed to gratify the wishes of the wife, is not proof of undue influence on her part.

4. *Wills—Division of property under—Decay of faculties—Proof as to.*—Where testator having children by two marriages, by his will left the greater portion of his property to those by his last wife, reciting that advancements equal to the difference had been made to the older set, and suit was brought to set aside the will on the ground of mental incapacity, proof that five years before he had made another will, distributing his property equally among all his children, without evidence that no such advancements had been made, was held not sufficient to lay the foundation for an inference that between the dates of the wills his faculties had been failing.

5. *Wills—Sanity of testator, medical speculations as to.*—Where the mental condition of a testator is thoroughly established *aliunde*, medical speculations relating thereto are entitled to but little weight.

*Appeal from Jasper County Circuit Court.*

*Ewing & Smith, with Bray & McAfee*, for Appellants, cited in argument, Tingley vs. Cowgill, 48 Mo., 291 ; Dozier vs. Jerman, 30 Mo., 216 ; Craighead vs. Wells, 21 Mo., 404 ; Rucker vs. Eddings, 7 Mo., 115 ; 1 Greenl. Ev., 147, § 74 ; 1 Phil. Ev., top p. 683, side p. 220 ; 2 id., 878–883 ; Redf. Wills, 514, §§ 14, *et seq.*; 518, § 19 ; 519, § 23 ; 528, § 43.

*J. C. Cravens*, for Respondents, cited in argument, Harris vs. Hays, 53 Mo., 90 : 28 Mo., 19 ; Redf. Wills, p. 30 ; id., p. 40, § 12 ; 41 N. Y., 229 ; Benoist vs. Murrin, 48 Mo., 51 ; Tingley vs. Cowgill, 48 Mo., 291 ; 21 Mo., 427 ; State vs. Wissmark, 36 Mo., 592 ; 44 Mo., 238 ; 19 Mo., 557 ; 16 Mo.,

226; McClintock vs. Curd, 32 Mo., 418; 3 Wash. C. C., 585; Boyd vs. Ely, 8 Watts. 66; 46 Mo., 148; 49 Mo., 594; 25 Mo., 306; 24 Mo., 227–236; 1 Redf. 533, 123, 128, 129, 132–3, 516, 526; 1 Mo., 313.

NAPTON, Judge, delivered the opinion of the court.

This was a suit to set aside the will of Sinnett Rankin, on the ground of mental incapacity, and undue influence of his wife.

At the trial the court ruled that the defendants held the affirmative, and the burden of proof was upon them to prove the due execution of the will, and that the testator was of sound and disposing mind when it was executed, and that, as to the question of undue influence, the burden of proof was on plaintiffs; that defendants had the right to open and close the case.

The defendants then proceeded to establish the execution of the will and the sanity of the testator by the two subscribing witnesses, who were examined as to all the facts occurring at the date of its execution and as to the testator's mental capacity.

The plaintiffs then introduced and examined a great number of witnesses to destroy the *prima facie* case of the defendants, and to show that the testator was incompetent to make a will.

The defendants then introduced a number of witnesses in rebuttal of plaintiff's testimony and corroborative of the proof in chief in support of the will. The plaintiffs then offered additional evidence in support of their evidence in rebuttal, but the court refused to hear any further testimony and closed the case.

Fourteen instructions were asked by the plaintiffs, but the court refused to give any of them, or any of those asked by the defendants, and of its own motion gave the following:

"If the jury believe from the evidence that the instrument of writing mentioned in the pleadings and read to the jury, was signed by Sinnett Rankin as his last will in the presence

of two witnesses, and that the witnesses subscribed their names to said instrument in his presence and at his request; that he was twenty-one years of age or upwards, and that the testator had at the time capacity to understand the business he was engaged in, recollecting the property to be disposed of, the objects of his regard, and the persons to whom he meant to convey it, and the manner in which he meant to distribute it, and was without any influence operating upon him at the time depriving him of his free will and desire in disposing of his property according as he desired—if the jury believe these facts, they will find for the will; otherwise, they will find against the will.

"In considering the question of undue influence, the jury will consider the circumstances and conversations at the time of executing the instrument.

"The jury are the sole judges of the credibility of witnesses and of the weight to be given to the testimony of each."

The verdict was in support of the will, and the judgment of the court was, after reciting that said will had been probated by the county court and reciting the will, that "the judgment of said county court in admitting said instrument of writing to probate is approved and confirmed, and the said instrument of writing is hereby adjudged and decreed to be the last will and testament of said Sinnett Rankin," &c.

To present the points of law made in the progress of the trial, it is unnecessary to give more than a condensed statement of the general tendency of the evidence.

The age of the testator at the time of the execution of this will is not stated in any of the testimony on either side, except that one of the witnesses for the contestants, who never saw him but once, conjectured he might be sixty or perhaps eighty; but it appears he had a large farm in Jasper county of about 1,400 acres, and during the war was compelled or induced to move into Kansas, and whilst in Kansas, in 1865, had an attack of paralysis which confined him to his room for four or five weeks.

After he recovered he returned to his farm in Jasper county, rebuilt the fences on it that had been destroyed or gone

out of repair, had various tenants under him—with whom he settled from time to time—and in short, re-established himself and his family in his former position of comfort and independence. The object and tendency of the evidence for contestants was to show a deterioration of intellect on the part of the testator after his paralytic stroke, evinced by irritability of temper; by occasional fits of despondency, and anticipations of the reduction of his family to beggary ; by an alleged tremor of his hands and swelling of his tongue; a difficulty in his speech, and an incapacity to discharge his saliva in the usual mode, and by sudden loss of memory in the midst of a conversation. On the other hand, most of these supposed indications of decaying intellect, if not all of them, were disproved or denied by about as many witnesses as had attested their existence. However this may have been, it seems to have been beyond dispute that the testator subsequently to his paralysis in Kansas, superintended all the operations of his large farm in Jasper successfully and in person, without the aid of any adviser or agent of any kind, and was a man of unusual ability and energy. His physical strength, it was conceded, was somewhat impaired by the attack of paralysis, though he still continued to ride around his farm and to the county seat whenever business required him, up to the date of his will in 1865, and subsequently.

The testator had five children by his last wife, one of the present defendants, and four children by a previous marriage. In his will he recited that his oldest children by his first marriage had been advanced to an amount fully equal to the share his younger children would get under the will, and left by this (in substance) all his property, estimated at from $30,000 to $40,000 in land, money, farming stock, etc., to his wife for life or during widowhood, remainder to be divided equally among his five children by her, with a power in the wife to make such advancements to any of them as she might see proper. The testator died in 1868, three years after the execution of his will.

No question is made that the verdict is not amply supported by the evidence, but some points are made here in reference to certain rulings of the court during the trial, and these present the only points of law for our consideration.

1st. It is insisted that after the close of the proponent's rebutting testimony, the contestants had a right to introduce evidence in corroboration of their testimony in chief, and to rebut the new and additional evidence introduced by the proponents. But it is obvious that such a practice, if adopted as a rule of proceeding, would make trials interminable. The mode and time of introducing testimony on trials, as has been often observed by this court, is chiefly a matter for the discretion of the court superintending the trial—to be exercised of course, so as to promote a fair and full investigation—and there are no doubt cases in which a party, who has by inadvertence or ignorance of its existence or other accidental causes, neglected to introduce in time a material piece of evidence, will be allowed and ought to be allowed to introduce it after the time has passed when, according to the rule of practice, it ought to have been offered. The main object of all rules is to give opportunity for a thorough investigation of the facts, and at the same time facilitate the progress of business and put an end to useless repetition of evidence already introduced by the introduction of other witnesses to the same facts, whose only object is to add the supposed weight of numbers to what has already been sufficiently explained. The strict observance of such rules is especially necessary in cases like the present, where opinions based on observation, or by experts upon hypothetical cases, are liable to be extended indefinitely. As the proponent's last evidence was entirely confined to the single question of sanity (the only point of fact disputed in the case) and strictly in rebuttal of the testimony on the same point given by the contestants, the court, we think, properly rejected the additional evidence offered without the allegation of any special reasons for its introduction. Had the proponents given evidence on the point of undue influence, which was an issue in the plead-

ings, the contestants, as they had offered no evidence on that point, might have been entitled to re-examine their witnesses or introduce additional ones in regard to that matter. That part of proponent's evidence, had such been given, would have been new matter and not strictly in rebuttal of contestants' proofs. But there was no such evidence offered on either side after the formal proof of the will by the subscribing witnesses.

2d. And in this connection we may notice the objection to the instruction of the court in regard to undue influences. That instruction would have been clearly wrong if there had been any evidence in the case tending, in any way, to support the charge of undue influence other than the statement made at the outset of the case by one of the subscribing witnesses to the will. This witness stated that after he had written the will, under the dictation of the testator and before it was subscribed by him or the witnesses, the testator called his wife from an adjoining room and requested the witness to read over the will to her, which he did, and thereupon the testator said to her, " do you accept that will ?" and the wife dropped her head, nodded, said yes, and shed tears, and immediately left the room. This was the only evidence in the case of undue influence of the wife, and the attention of the jury was therefore directed to this by the second instruction. It seems strange that such an occurrence could have been perverted into any proof of the slightest improper influence on the part of the wife. There seems to have been on the part of the testator a consciousness of the affectionate fidelity and worth of his wife, and that she deserved to be consulted in regard to duties and restrictions about to be imposed on her by the will, and if it should even be inferable from this that he would have changed the will to gratify her wishes, it does not follow that such deserved tribute to that influence, which a faithful wife was entitled to exercise, could be tortured into an exercise of undue influence.

3d. The contestants offered to prove that the testator made a will in 1860, when he was beyond question of sound mind,

making a division of his property about equal among all his children, leaving his present wife a much smaller bequest than in the will in controversy made in 1865 ; but this proof was rejected by the court, and we think properly. Such proof could only show a change of mind on the part of the testator, between 1860 and 1865, for reasons satisfactory to him, and not subject to the revision of juries or courts. If such offer was designed to lay the foundation for an inference of dimin-ished health of body and mind between the dates referred to, it certainly should have been accompanied with proof that no advancements were made to his elder children during the interval named. But had such additional proof been offered. we cannot say that it should have been admitted. It would have been too remote to be entitled to any weight in the trial of the present issue.

4th. A medical expert stated that when the cause of par-alysis originates in the brain, it sometimes impairs the mind, and that, when it is originating, the facial nerves are almost always affected, and the speech also, and in such attacks the mind is frequently impaired. After this explanation the plaintiffs proposed to prove by the physician, who attended the testator in his last illness in the fall of 1868, and by others, that after the making of said will in 1865, the testator was again stricken with paralysis and was affected in the same way as in Kansas, and to prove in the hearing of the medical expert, then on the witness stand, the symptoms and effects of these attacks had after the will was made, to enable or assist the said medical expert in giving an opinion as to the extent of the effect of the stroke of paralysis in Kansas on the mind of the testator, and further to prove by said expert that such evidence would enable him to give a more satisfac-tory opinion as to the effect of attacks, had before the mak-ing of the will, upon testator's mind.

The court refused to allow the evidence, and exceptions were taken.

Speculations, such as these questions propose, may possibly be useful in aiding conclusions as to a condition of mind or

body about which there is no positive testimony. It may be that the condition of a person, directly or very soon after an event, may enable medical experts better to determine the condition and capacity immediately before that event by a sort of a *posteriori diagnosis*, but as in this case, three years passed from the date of the will to the death of the testator, and his mental capacity prior to his will and subsequent to his first attack of paralysis, was thoroughly established, one way or the other, apart from all hypothetical reasoning of experts, mere speculations on the subject could be entitled to but little weight, much less speculations so far-fetched as those proposed in the interrogatories we have copied.

We have not noticed the instructions asked in this case on both sides, because it is obvious that the instructions given in regard to the issue before the jury were sufficiently comprehensive.

Judgment affirmed. All the other judges concur.