Jackson v. Hardin.

Judgment affirmed. All concur, except Hough, ·C. J., absent.

---

## JACKSON et al., Appellants, v. HARDIN et al.

1. **Will, Capacity to Make.** One who is capable of comprehending ·all his property and all the persons who reasonably come within the range of his bounty, and who has sufficient intelligence to understand his ordinary business and to know what disposition he is making of his property, has sufficient capacity to make a will.

2. ——. One may be capable of making a will, and yet be incapable of making a contract or managing his estate.

3. **Will, Contest concerning:** PRESUMPTION: BURDEN OF PROOF. The law presumes that a testator was possessed of a sound and disposing mind, and it rests upon him who disputes the validity of the will to overcome this presumption by persuasive evidence.

4. **Will, Determining Validity of:** DUTY OF COURT AND JURY. In determining the validity of a will it is unsafe for courts and juries to look to its equities, lest they fall into the greater mischief of making wills for other people.

5. **Will:** UNDUE INFLUENCE. The influence exerted upon a testator which would be sufficient to invalidate his will must be such as amounts to over-persuasion, coercion or force, destroying his free agency or will-power, and not merely the influence of affection or attachment, or the desire of gratifying the wishes of one beloved, respected and trusted by the testator.

6. The testator in this case held to have been possessed of a sound and disposing mind, and free from undue influence in making his will.

7. **Practice:** PROVINCE OF JURY: DUTY OF COURT TO DIRECT A VERDICT. Where there are facts established from which the jury may reasonably draw legitimate inferences tending to sustain an issue, the court should not interfere. But, where the evidence is such that it would be the plain duty of the trial judge to set aside the verdict as unsupported by the evidence, it is his duty and prerogative to interfere before submission, and direct a verdict for defendant.

8. **Pleading:** PRACTICE: EVIDENCE. In an action contesting the validity of a will, where several of the devisees are made defendants, it is a general rule that the admissions or statements of one of the defendants as to undue influence may be given in evidence

| | | | | |
|---|---|---|---|---|
| 83 | 175 | | 83 | 175 |
| 96 | 664 | | 160 | 579 |
| 83 | 175 | | 160 | 581 |
| 98 | 439 | | 83 | 175 |
| 99 | 181 | | 161 | 81 |
| 83 | 175 | | | |
| 100 | 99 | | 83 | 175 |
| 37a | 185 | | 162 | 647 |
| 83 | 175 | | | |
| 39a | 684 | | 83 | 175 |
| 41a | 477 | | e169 | 1640 |
| 41a | 498 | | 94a | 9485 |
| 83 | 175 | | | |
| 107 | 339 | | 83 | 175 |
| 83 | 175 | | 172 | 2702 |
| 110 | 462 | | 175 | 5502 |
| 83 | 175 | | | |
| 113 | 65 | | 83 | 175 |
| 113 | 255 | | 102a | 4476 |
| 114 | 47 | | | |
| 115 | 345 | | | |
| 115 | 595 | | | |
| 116 | 14 | | | |
| 83 | 175 | | | |
| 120 | 209 | | | |
| 83 | 175 | | | |
| 121 | 98 | | | |
| 121 | 552 | | | |
| 123 | 179 | | | |
| 124 | 524 | | | |
| 59a | 599 | | | |
| 59a | 641 | | | |
| 83 | 175 | | | |
| 129 | 201 | | | |
| 129 | 538 | | | |
| 129 | 603 | | | |
| 130 | 141 | | | |
| 131 | 411 | | | |
| 64a | 548 | | | |
| 83 | 175 | | | |
| 132 | 34 | | | |
| 132 | 146 | | | |
| 134 | 497 | | | |
| 83 | 175 | | | |
| 138 | 213 | | | |
| 138 | 226 | | | |
| 72a | 613 | | | |
| 83 | 175 | | | |
| 141 | 614 | | | |
| 144 | 55 | | | |
| 144 | 363 | | | |
| 83 | 175 | | | |
| 145 | 545 | | | |
| 150 | 528 | | | |
| 151 | 90 | | | |
| 77a | 134 | | | |
| 77a | 154 | | | |
| 83 | 175 | | | |
| 153 | 237 | | | |
| 154 | 579 | | | |
| 83 | 175 | | | |
| f156 | 152 | | | |
| 83 | 175 | | | |
| 157 | 10 | | | |
| 157 | 19 | | | |

against all. But where the petition only charges undue influence as to a part of the defendants, the proof will be restricted to its averments.

9. **Practice**: EVIDENCE. Where the trial court refuses to allow a witness to testify, the party introducing him should state what he desired to prove by the witness, otherwise it cannot be known whether the evidence sought to be introduced is material and competent, and the Supreme Court will not review the action of the lower court.

10. **Will**: JUDGMENT: PRACTICE. Upon an issue of *devisavit vel non*, the trial court should enter a decree establishing or rejecting the will; a decree of dismissal is erroneous and the Supreme Court, under the provisions of R. S., sec. 3776, will enter the proper judgment.

*Appeal from Randolph Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*H. S. Priest* for appellants.

(1) There was evidence sufficient to go to the jury upon the question of the want of testamentary capacity of the testator. *Benoist v. Murrin*, 58 Mo. 307; *Young v. Ridenbaugh*, 67 Mo. 574; 1 Redfield Wills, 520-1. (2) If the testimony of Mrs. Jackson be true (and that was a question for the jury to determine), the testator was influenced in making the will, as to her, by a delusion. *Benoist v. Murrin*, 58 Mo. 307. (3) It was a question for the jury to determine, whether the will was attested by the attesting witnesses, Powell and George, in the conscious presence of the testator. *Odenweider v. Scorr*, 8 Mo. App. 458; *Downie's Will*, 42 Wis. 66. (4) The evidence tended fairly to show a confidential relation between the testator and James H. Hardin, and that he aided in procuring the will and wording it, and advised what changes the testator desired to make, and was benefited by it as executor, and by the exclusion of these appellants. The burden of proving fairness in the will and the non-abuse by James H. Hardin of the testator's

confidence was upon the respondents, and this was a question for the jury. *Harvey v. Sullens*, 56 Mo. 372; *Young v. Ridenbaugh*, 67 Mo. 574.

*W. A. Martin*, also, for appellants.

The court erred in refusing to allow the witness, Mrs. Mary E. Herold, to testify as to what she had heard any of defendants say about the second will being made to make John equal with the other children, and as to what she had heard her brother John say as to the will being changed in consequence of dower to her step-mother. The declarations of a party to the record are admissible against him or one identified in interest with him. 1 Greenleaf Ev. (10 Ed.), pp. 247, 248, 249, secs. 171, 172; *Armstrong v. Farras*, 8 Mo. 627; *Herst v. Robinson*, 13 Mo. 82; *Allen v. Allen*, 26 Mo. 327. The court, also, erred in allowing defendants to ask the same witness if her father did not loan her husband a large amount of money that was never paid back. There were three things upon which the jury should have been allowed to pass. First, was the will executed in the manner prescribed by the statute? Second, was the testator of sound and disposing mind when he made his will? Third, was the execution of the will the result of undue influence exerted by J. H. and Ben. T. Hardin? The court erred in sustaining the demurrer to plaintiffs' evidence. *Buesching v. Gas Light Co.*, 73 Mo. 219. In order to sustain the demurrer the evidence must not only be weak, but in fact there must be no evidence. *Routsong v. Pacific Railroad*, 45 Mo. 236. The right to dictate in advance what the finding of the jury shall be does not follow from the right of the court to review the finding. *Lockwood v. Atlantic Mutual Ins. Co.*, 47 Mo. 50. Has not this court universally held that if there is any evidence it must go to the jury, who are the exclusive judges of its weight and sufficiency, however slight it may be, and whether direct or inferential?

*Chamberlain v. Smith*, 1 Mo. 482; *Labeaum v. Dodies*, 1 Mo. 618; *Speed v. Herrin*, 4 Mo. 356; *Obuchon v. Boone*, 10 Mo. 442; *Robins v. Alton Marine Fire Ins. Co.*, 12 Mo. 380; *McFarland v. Bellows*, 49 Mo. 311; *Holiday v. Jones*, 59 Mo. 482; *Grady v. American Central Ins. Co.*, 60 Mo. 116.

*John F. Williams, S. C. Major, H. M. Porter* and *Ben. T. Hardin* for respondents.

(1) The first point in issue in this case is the charge of undue influence on the part of Jas. H. Hardin and Ben. T. Hardin. On this point the following authorities are cited: *Rankin v. Rankin*, 61 Mo. 295; *Higgins v. Carlton*, 28 Md., published in 8 vol. Am. L. Reg., p. 255; *Clark v. Davis*, 3 Am. L. Reg., p. 376; Redfield's Am. Will Cases, p. 259; *Brinkman v. Rueggesick*, 71 Mo. 556; *Tingley v. Cowgill*, 48 Mo. 291. (2) The second point in issue is as to the capacity of the testator to make a will. We cite the following authorities: *Harvey v. Sullens' heirs*, 56 Mo. 372; *Benoist v. Murrin*, 58 Mo. 307; *Clark v. Davis*, 3 Am. L. Reg., 376; Ray, Med. Jur. 313 & n.; Redfield on Wills, chap. 4, sec. 10; *Thompson v. Kyner*, 65 Pa. St. 368; *Stubbs v. Houston*, 33 Ala. 555; *Brinkman v. Rueggesick*, 71 Mo. 553; *Appleby v. Brock*, 76 Mo. 314. (3) The third point in the case is as to the action of the court in sustaining the demurrer to the plaintiffs' evidence. On this point we cite the following authorities: *Boyer v. Dively*, 58 Mo. 510; *Young v. Ridenbaugh*, 67 Mo. 574; *Appleby v. Brock*, 76 Mo. 314; *Boland v. Mo. R. Co.*, 36 Mo. 484, 491; *Myer v. Pacific R. R. Co.*, 40 Mo. 151; *Clark v. Hannibal, &c., R. Co.*, 36 Mo. 202, 217; *Lee v. David*, 11 Mo. 114, 116; *Callahan v. Warne*, 40 Mo. 131; *Vinton v. Schwab*, 32 Vt. 612; Thompson On Charging the Jury, p. 44; *Chandler v. Von Roeder*, 24 How. (U. S.) 227; *Commissioners v. Clark*, 94 U. S. 278, 284.

PHILIPS, C.—This is a petition to contest the validity of the published will of Ben. Hardin, deceased. The

plantiffs, Susan Jackson and Mary Herold, are daughters of the testator and the defendants are his other children. The will was executed on the 26th day of August, 1879, and the testator died on the 31st day of said month.

The provisions of the will were as follows: First, to his wife he gave during her natural life all that the statute of the state allowed her, and at her death to revert back to the estate to go as thereinafter directed as to the remainder of his estate. Second, directed and authorized his executor to convert the balance of the property into money. Third, directed that out of the estate his daughter, Catherine, should be educated as his older daughters had been and a like provision for the education of his son, George, such as his other brothers had received. Fourth, to his daughter, Susan Jackson, he gave nothing, as she had already received twenty-three hundred dollars. Fifth, for his daughter, Mary Herold, he directed that the sum of five hundred dollars be set apart and the interest paid her annually thereon. Sixth, the residue of his property he directed should be divided equally among the rest of his children. Seventh, in the event of George or Catherine dying without issue he directed that their portion should be divided equally among his children, only in the same manner as provided for the remainder of the estate.

The validity of the testament is assailed on two grounds: First, for the want of sound mind and memory. Second, because of his enfeebled condition consequent upon old age and sickness, the will was procured through the undue influence, fraud and artifice of the defendants, James H. and Ben. T. Hardin. The cause was submitted on proper issues for trial before a jury. On the conclusion of the plaintiffs' evidence the court sustained a demurrer to the same and directed the jury to return a verdict for defendants, which was accordingly done. The plaintiffs have brought the case here on appeal.

I Redfield on the Law of Wills (Vol. I, p. 124) says: "We have no instruments by which we can assume the extent of mental capacity. Each case will have to be decided upon its own peculiar facts and circumstances, and somewhat too upon the peculiar bias and theory of the triers of the fact. It is impossible they (the decisions) should be consistent when they have to be made by such a variety of courts acting upon such a contrariety of facts and circumstances. The result of the best considered cases upon the subject seems to put the *quantum* of understanding requisite to the valid execution of a will upon the basis of knowing and comprehending the transaction, or, in popular phrase, that the testator should, at the time of executing the will, know and understand what he was about."

In *Benoist v. Murrin*, 58 Mo. 322, this court through Wagner, J., laid down the following rule: "A disposing mind and memory may be said to be one which is capable of presenting to the testator all his property, and all the persons who come reasonably within the range of his bounty, and if a person has sufficient understanding and intelligence, to understand his ordinary business, and to understand what disposition he is making of his property, then he has sufficient capacity to make a will;" citing *Converse v. Converse*, 21 Vt. 168, which declares that if the deceased was, at the time, capable of understanding the nature of the business and the elements of the will, that is, the nature and extent of his property and the persons to whom he meant to convey it and the mode of disposition, it is sufficient. And in *Brinkman v. Rueggesick*, 71 Mo. 556, Napton, J., said: "It is conceded in most of the cases that a man may be capable of making a will, and yet incapable of making a contract, or managing his estate."

Applying these established standards to the facts of this case, did the plaintiffs on the issue of mental incapacity make out a *prima facie* case? The evidence showed that, at the time of the execution of this will,

the testator was about 69 years old. For many years he had suffered from asthma and at times with dyspepsia. His physical condition was weak and he was naturally irritable. He had been prostrate in bed for two or more weeks and his life was despaired of; yet the evidence showed that he was a man of great tenacity of purpose and self-assertion; and there is nothing in the evidence to indicate that he had lost either the ambition to exercise dominion over his property, or interest in its management. He was possessed of memory and reason, and seemed to comprehend all his property, as well as the persons who were the subjects of his bounty. Mr. Powell who drafted the will testified in substance that when he arrived at the house the defendant, James Hardin, told him that his father wished to make a change in his will, and also what the change was. But when he reached the testator he seemed to comprehend precisely what change he desired and told him what he wanted done. Witness said: "I questioned him until I ascertained what he wanted done and made such changes in the old will as he directed. I copied such parts of the old will as suited him; when I came to any thing I did not understand, I asked the old gentleman; he said he did not want his wife's children by a former husband to inherit any portion of his property. As a general thing I think he transacted his own business. He was a man of that character."

It is true, he was at the time quite ill and suffering from nausea at the stomach, so that he made several unsuccessful attempts to attach his signature to the will before it was executed. But as proof that he comprehended what he was doing, he said to Mr. Powell, "not to be impatient, he would feel better directly and then he would sign it." The other attesting witness, Mr. George, who had known the testator well for many years, testified that at the time of the execution of the will, "his mind seemed to be as good as it ever was; his will power and determination were as strong; he ruled in his own family."

The law presumes that the testator was possessed of a sound and disposing mind.  And after the statements made by the attesting witnesses, the burden of proof rested on the contestants to overcome this presumption by persuasive evidence.  The plaintiffs called neither the family physician nor any of the neighbors, nor other disinterested person, to speak to the mental condition of the testator.  Plaintiffs' testimony:  The only instance given of his mental aberration is found in the statement of Mrs. Herold.  She stated that the day before the will was executed, her father was drowsy and that when her sister, Mrs. Jackson, went to leave, "she shook hands with Pa and told him good-bye, and shortly after that Pa roused up and asked if any one had gone.  At that time appeared delirious.  He made a will the day before."  This occurrence was a day or two before the will in question was made.  It was, in itself, of too little moment to predicate any reasonable basis of his mental condition at the time he suggested the change in his former will and executed the last.  James Hardin testified that he saw his father Friday and Monday before he died.  "He knew me and I did not see any difference in him mentally."  His widow testified: "He was of sound mind up to the time of his death; my husband was a man of strong will; his children never dared to cross his will."

The other circumstances relied on to show a clouded memory and imbecile intellect are as follows: In the spring of 1879 he had a lease to a certain mining property drawn up.  This he had changed two or three times and finally did not execute it at all.  This at best was but evidence of fickleness and caprice.  If men's wills are to be broken on account of such temper and acts, not only would old men generally, but, I fear, many young men could, be held legally incompetent to make any sort of contract.  What his characteristics in this regard had been hitherto is not developed in the evidence so as to give any significance to this isolated instance.  The other

circumstance relied on as proof of his lack of memory is that he asked his son-in-law, Downing, for money which had already been paid. This evidence came second-handed through a witness who heard Downing say so. What the testator would have said in explanation, or what the peculiar circumstances were, or whether Downing told the truth about the first payment are matters of conjecture. A single occurrence of this character is too common in the affairs of business men to constitute any solid foundation for annulling a solemn testament.

It is further claimed that the testator labored under insane delusions. The proof of this rests on the evidence of Mrs. Jackson, one of the contestants, who testified in contradiction of the statement of the testator in his will, that he never gave her the sum of $2,300. It is not obvious how this misstatement of a fact, if it be one, would indicate hallucination or insane delusion. But there are facts in the record which may satisfactorily explain this matter. There was a coal mine concern in Randolph county in which the testator was concerned, known as the "Jackson Coal and Mining Co." This Mrs. Jackson's husband seems to have been concerned in it. The witness, Bell, who testified on behalf of plaintiffs, stated that the testator loaned this company $1,000, and the company owed him in addition the sum of $800—making a sum total of $1,800. What became of this advancement? The inventory of the testator's estate in evidence shows in detail all the property, real and personal, of the testator at the time of his death, but this advancement to the coal company does not appear; and it is to be presumed that, had it been repaid to the testator in his lifetime, the witness Bell, who was president of the concern, with the books in court, would have been drawn out on that subject by plaintiff's counsel. If the $475 paid by testator for Mrs. Jackson's piano and other property, admitted by her to have been given her by her father, be added to said $1,800, the aggregate would amount to about the sum of $2,300. It is not unreas-

onable, but altogether probable, that Mr. Hardin regarded that as an investment made for Mrs. Jackson's husband, and so charged her therewith. This may have been unjust to her, but in determining the validity of a will it is quite unsafe to look to its equities, lest courts and juries fall into the greater mischief of making wills for other people.

Be the truth of this matter as it may, no court would be justified in setting aside the testament of such a man as this record shows Mr. Hardin was on such a mere imputation. When this opinion was first presented, I was misled by a confusion of statement of respondents in confounding the case of Mrs. Herold with that of Mrs. Jackson. The facts touching the relation between the testator and his sons-in-law show clearly enough a disposition on his part to regard his daughters as justly chargeable with what he had lost through their husbands.

II. The undue influence relied on is imputed to the defendants, James and Ben. T. Hardin. It does not appear that either of them said anything to their father about making the change in question in the will. At the uttermost, it is but conjectural that they held an interview with him touching the matter. There is nothing in the record to indicate that any improper influence was exercised over the testator in procuring the will made a few days prior to the one in litigation. The only change, so far as I can gather from the record, made in the former will, was to prevent the reversionary interest in that portion of the property willed to the wife from going, after her death, to her children by a former husband. This being the case, how are these contestants injured by the last will? They get the same under the existing will as under that revoked. May it not, therefore, be said of their contention: *Rixatur de lana caprina*, they complain about goat's wool? The complaint made of this feature to the former will was by John Hardin, and not James or Ben. James, it is true, seems to have known that his father proposed to make the change. But who

suggested it is but conjectural. The witness, Powell, testified that the testator seemed to understand what the change desired was and he wrote it according to his direction. He read the will by paragraphs to him as written, and he approved it *seriatim*. Even had the designated defendants suggested the change to their father, and suggested reasons why his estate should not ultimately go to alien blood, the integrity of the act could not well be questioned. It is true, these two defendants were in the room when the will was drawn, but they said nothing; and there was nothing secret or exclusive attending the transaction. James had been the agent in some transactions for his father and doubtless enjoyed his confidence. In this there was certainly nothing unnatural or suspicious. The influence acquired by a child over a parent through offices of kindness and an exhibition of a capacity for business and the quality of good judgment is not reprehensible. The influence denounced by law must be such as amounts to over-persuasion, coercion or force, destroying the free agency and will-power of the testator. It must not be merely the influence of affection or attachment, nor the desire of gratifying the wishes of one beloved, respected and trusted by the testator. *Rankin v. Rankin*, 61 Mo. 295; *Higgins v. Carlton*, 28 Md. 118; 1 Redf. on Wills, p. 522, 3.

While the extreme age, helplessness and consequent susceptibility of the testator are important factors in the ascertainment of the undue influence, yet it is not to be inferred from either age, sickness or debility of body if sufficient intelligence remains. *Higgins v. Carlton, supra*. It is evident from the record that the mental powers of the testator were clear enough to understand what he was doing; and to indulge the idea that his judgment in making this will was coerced or his free agency subverted, would be more fanciful than just or safe. As neither courts nor juries can make wills for men they ought to be careful in unmaking them. We are not unmindful, in upholding the action of the court

in taking this case from the jury, of the great importance of the trial courts not trenching upon the rightful province of the jury to determine and judge of the facts. Where there are facts established from which the jury may reasonably draw legitimate inferences tending to sustain an issue, the court should not interfere. But where the evidence is of that character that the trial judge would have a plain duty to perform in setting aside the verdict as unsupported by the evidence, it is his duty and his prerogative to interfere before submission to the jury and direct a verdict for the defendant. *Powell v. Railroad Co.*, 76 Mo. 84–5; *Landis v. Hamilton*, 77 Mo. 554.

III. It is claimed, however, that the court erred in refusing to allow defendants' witnesses to answer certain questions which might have developed additional evidence touching the issue of undue influence. The witness, Mrs. Herold, was asked to state: "What you heard any of the defendants say about second will being made to make John equal to the other children." And Asa C. Hardin was asked: "What statement, if any, have you heard your brother, John, make in reference to this will to have it changed in consequence of the dower to your step-mother?" The general rule is that the admissions or statements of one of the parties to the record in an action of this character is admissible against all the defendants, because there is a joint interest in all. 1 Greenl. Ev. secs. 171, 2, 4; *Armstrong v. Farrar*, 8 Mo. 627. But have not the plaintiffs, under the peculiar averments of the petition, excluded themselves from the operation of the rule? The undue influence is limited to James and Ben. Hardin. *Expressio unius est exclusio alterius.* The misconduct of no other party or person could be expected to be inquired into under this limited averment. The plaintiffs have thus restricted the field of inquiry. The defendants could not be required to come prepared to investigate the conduct of any other persons. A party may be held to prove an unnecessary averment—as where he has averred more than was essential to the right of

recovery. *Lindsay v. Davis*, 30 Mo. 412. So, where he unnecessarily restricts the issues by his allegations he should be bound to the issue thus limited. Nor will he be allowed to predicate a recovery on one fact and prove another. *Waldhier v. H. & St. J. R. R. Co.*, 71 Mo. 514; *Nicholas, Shepherd & Co. v. Larkin*, 79 Mo. 264.

There is another reason why the matter here complained of should not constitute reversible error. The plaintiff should have gone further and stated what he proposed to prove so that the court could determine whether it was material. The case might be reversed on the naked refusal to permit an answer to this question, and on retrial it might appear that the matter elicited was wholly immaterial and incompetent. This principle is announced in the case of *Aull Savings Bank v. Aull*, 80 Mo. 199. Had the question been in such form as to disclose its materiality, as was the case in *Armstrong v. Farrar*, *supra*, this court might determine its admissibility.

It follows from the foregoing review of this record that the action of the circuit court should be affirmed. It appears from the record that the judgment of the circuit court was that plaintiffs take nothing by their writ and that defendants go thereof without day, etc. This was erroneous. Upon the issues of *devisavit vel non* the court should have established or rejected the will. The decree of dismissal must, therefore, be reversed. And this court, proceeding under section 3776, R. S., will enter a judgment that the paper writing admitted to probate by the probate court of Randolph county as the will of Ben. Hardin, deceased, was the last will and testament of said Ben. Hardin. All concur.