Gantt, P. J.
This appeal is from a judgment of the circuit court of Ralls county establishing the last will and testament of Americus W. Farmer, deceased, late of said county. The contestants were his widow and all of his children save one, a daughter, Harriet E. Farmer, to whom he devised the principal portion of his estate, subject to a life estate of one third to his wife. A. W. Farmer executed the will in contest on the twenty-first day of January, 1892, and died the next day.
Over five years prior to the execution of the will in question he executed another will in which he made the same disposition of his property except he named a different executor and made a somewhat more liberal provision in this last will for his wife. The sole ground upon which the will is attacked is found in the following averment in the petition:
“That said paper writing is not the last will and testament of said Americus W. Farmer, but that said Americus W. Farmer at the date of said paper writing was not of sound mind and memory; that by reason of physical injuries received during his lifetime, and of his age, and his protracted and extreme sickness at said date of said paper writing, the said Americus W. Farmer was at said time of unsound mind and memory, and was mentally incapacitated from making a will, or any distribution of his property.”
The will in dispute was drawn by Hon. J. P. Wood, a member of the bar of that county, and was attested by himself and Charles Carter, Jr.
For the contestee these two subscribing witnesses testified that the testator was capable of understanding the business he was transacting and capable of executing a will that disposed of his property. Mr. Wood had drawn the first will in 1886, and testified that Mr. Farmer was at his office about six weeks before his *536 death and told him what changes he desired to make in his will. He had been his attorney for ten years.
Carter, the other subscribing witness, was a neighbor who had known the testator for twenty years and testified he was of sound mind. Dr. Downing, a physician who attended him in his last illness, testified that “he was perfectly competent to do so.” “There was nothing about his sickness like insanity.”
On the part of contestants there was much evidence of a most deplorable nature; testimony by all the contestants of maltreatment by deceased of his wife and children, and of the fact that- in 1886 he shot and killed one of his sons, William Parmer, and was shot by said son four or five times.
These witnesses testified to facts tending to show a most unnatural antipathy by the husband and father after a blow he had received on his head some twenty-four years before the trial, and a restless, troublous state of mind after the killing of his son and there were other witnesses to the morbid condition of his mind after the killing of his son.
In rebuttal of this, however, there was evidence by the business men and county officials of the county who were intimately acquainted with Mr. Parmer in his lifetime, and down to a time immediately preceding his death, that they saw no evidence whatever of insanity and regarded him as entirely competent to transact business.
Por the contestants the court gave the following instructions:
1. “The burden rests on the defendants to prove that Americus W. Parmer, at the time of making the will, possessed a disposing mind, that is, that he had sufficient understanding to transact his ordinary business affairs and understood what disposition he was making of his property, and to whom he was giving it. *537 If the jury find the will produced to be not the will of Americus W. Parmer, the verdict may be in the following form:
‘We the jury find the will produced to be not the will of the testator. ’
2. “The court instructs the jury that a disposing mind and memory is a mind and memory which have a capacity for regarding and discriminating and feeling the relations, connections, and obligations of family and blood; and that a person may have upon some subjects and even generally, mind and memory and sense .to know and comprehend ordinary transactions, and yet upon the subject of those who would naturally be the objects of his care and bounty, and of a reasonable and proper distribution as to them of his estate, he may be of unsound mind; and if the jury find from the evidence that in making the will in controversy the mind of Americus W. Parmer was controlled and directed .by hatred and morbid and insane delusion as to the natural objects of his bounty to such an extent as that he did not comprehend the disposition he was making of his property, then said Parmer was not of sound and disposing mind and memory at the time he made said will.”
Por the proponent the court instructed as follows:
1. “The jury will determine the question whether or not the will produced be the last will of the deceased, Americus W. Parmer. If the jury find from, the evidence in the cause that the deceased, at the time of the execution of the will, had sufficient understanding and intelligence to transact his ordinary business affairs, and understood what disposition he was making of his property and to whom he was giving it, then they will find in favor of the validity of the will, and in such case the verdict may be in the following form: ‘We, *538 the jury, find the will produced to be the will of the testator. ’
2. “The jury are instructed that if they believe from the evidence the instrument proposed as the will of Americus W. Farmer was by him signed in the presence of these witnesses, James P. Wood and Charles Carter, who, in his presence and at his request, subscribed their names as witnesses thereto; that at the time of his subscription to said instrument, and at the time of such subscription and declaration, he was of sound mind, then the jury will find it to be the will of the said Americus W. Farmer.
3. “The court instructs the jury that a man has the right to dispose of his property by will as he may choose, even to the entire exclusion of those who but for the will would be the heirs of his estate; and the jury are not to consider whether or not the disposition made by the testator is appropriate, or, in the opinion of the jury, just, but simply whether the paper propounded as his will be or be not his last will and testament.”
To which action of the court in giving said instructions, and each of them, the contestants at the'time objected and excepted, and still except.
The court refused to give the following other declarations prayed by the contestants:
3. “The court instructs the jury that a person who is of rational understanding in all other things, may in one or more particulars be insane; that there is a partial insanity and a total insanity, and that such partial insanity may exist as it respects particular persons, things, or subjects, while as to others the person may not be destitute of reason; that it is not sufficient of itself that a man should be able to describe his feelings tor give • suitable answers to ordinary questions; this he may do and yet the mind be too much diseased *539 to enable him to dispose of his estate with understanding and discretion; that when a man is of unsound mind as to the natural objects of his bounty, or the proper and reasonable distribution to them of his estate, he can not be regarded of sound mind and memory, though he may be so as to all other persons and matters.
4. “The court instructs the jury that what is meant by testamentary capacity in these instructions is a rational understanding on the part of the testator at the time of the making of his will, of the business he was engaged in, of the kind and value of the property devised, of the persons who were the natural objects of his bounty, and of the manner in which he wished to dispose of his property, unaffected by any morbid and insane delusion regarding any of these subjects; and if the jury find from the evidence that Americus W. Parmer, at the time he executed the will in controversy, was affected by any such morbid or insane delusions, then he did not possess that testamentary capacity requisite to make a will.
5. “The court instructs the jury that the law means by the expression, ‘a morbid and insane delusion,’ the belief of the existence of a state of supposed facts by the testator in relation to the natural objects of his affection and bounty which no rational person would have believed or been controlled and directed by.”
Under the instructions and upon the evidence the jury returned a verdict sustaining the will, and the contestants appeal.
I. There was no error in the first instruction for proponent. It is commendable for the simplicity of the language and the clearness with which the jury are informed of the requisite capacity to make a will.
It was not erroneous or wanting in any essential *540 because it did not repeat tbe formula so often adopted “that the testator must have a mind and memory capable of presenting to him his property and the persons who come reasonably within the range of his bounty.” This instruction is in perfect harmony with the first and second instructions asked and given for the contestants and fully meets the requirements of the law.
In Myers v. Hauger, 98 Mo. 433, it was said, “If "WiHiam Hauger had sufficient understanding and intelligence to transact his ordinary business affairs and understood what disposition he was making of his property and to whom he was giving it, then he possessed a disposing mind,” citing Benoist v. Murrin, 58 Mo. 322; Jackson v. Hardin, 83 Mo. 184; Brinkman v. Rueggesick, 71 Mo. 553.
II. Having correctly defined disposing mind and testamentary capacity, there was no error in declining to give instructions 3 and 4 asked by contestants because they were fully embraced in the instructions given, nor was there any error in refusing the fifth instruction of contestants. It is the duty of the court to define technical words and phrases but the court is not called upon to define the plain or ordinary words- of the English language.
Our experience leads us to conclude that very often the attempted definition is so involved that it tends to confuse rather than elucidate, and words and phrases otherwise readily understood and in common use are rendered obscure by the definition. It is safe to assume that our jurors are men of average intelligence and if they were in this case they certainly comprehended the meaning of the phrase “a morbid and insane delusion.”
III. In the absence of any evidence tending in the most remote degree to show that the will was the product of undue influence and with no claim of this char *541 acter in the pleadings, the sole issue was whether the paper writing was the last "will and testament of Americus Farmer and the jury were properly restricted to the issue in hand and they had no right to consider the inequality of the legacies and devises. This inequality alone appearing raised no presumption against the will. The testator had a perfect right to dispose of his property as he saw fit. There being no question of undue influence in the case, the sole questions were the mental capacity of the testator and the execution of the will according to the statutes as to signing and attestation.
When these were shown, as was quoted with approval in Maddox v. Maddox, 114 Mo. 35, the testator had a right “to make an unreasonable, unjust, unjudicious will, and his neighbors have no right, sitting as a jury, to alter the disposition of his property, simply because they may think the testator did not do justice to his family connection.” Boylan v. Meeker, 15 N. J. Eq. 310; Mackall v. Mackall, 135 U. S. 171; Smith v. Smith, 48 N. J. Eq. 591; Jackson v. Hardin, 83 Mo. 185; Moore v. Moore, 67 Mo. 192; McFadin v. Catron, 120 Mo. 252. The instruction was based upon the facts of this case, and as applied to this case was entirely proper.
IY. Contestants are in no position to complain of the failure of the court to limit the jury in their consideration of the first will made in 1886. This is a civil case and the court was not required to instruct on its own motion. The capacity of the testator to make the will in question having been submitted to the jury under correct instructions, their verdict will not be disturbed. Garland v. Smith, 127 Mo. 567, 28 S. W. Rep. 191. The judgment is affirmed.
Bubgess and Shekwood, JJ., concur.