[No. 661.    September 1, 1896.]

## SCIPIO AGUILAR, PLAINTIFF IN ERROR, v. TERRITORY OF NEW MEXICO, DEFENDANT IN ERROR.

CRIMINAL LAW—MURDER—APPEAL—FAILURE OF CLERK TO SEND UP TRANSCRIPT.—On appeal, by the defendant in a murder case, which by section 2483, Compiled Laws, operates as a supersedeas, in such cases, it is the duty of the clerk, under section 2476, to send up the transcript without delay; and the failure or refusal of the appellant to pay for such transcript, can not be set up by the clerk as an excuse for his failure to do so.

ID.—INSTRUCTIONS.—It is the duty of the trial court to instruct the jury properly and fully as to the law in all criminal cases, as well as in civil cases, whether requested to do so or not, and its failure to do so is reversible error.    Territory v. Friday, 8 N. M. 204.

ID.—MURDER—INSTRUCTION.—In a murder case, where the record utterly failed to show how or under what circumstances the killing occurred, the court erred in giving an instruction for murder in the first degree only.    (LAUGHLIN, J., dissenting.)

ERROR, from a judgment of conviction for murder in the first degree, to the Fourth Judicial District

Court, San Miguel County.   Rule directing the clerk
of the fourth district to send up the transcript of the
record and proceedings in this cause, made absolute.
Reversed and remanded;  LAUGHLIN, J., dissenting.

The facts are stated in the opinion of the court.

THOMAS B. CATRON and MIGUEL SALAZAR for plain-
tiff in error.

The court erred in not instructing the jury as to
the different degrees of murder.   Territory v. Nichols,
3 N. M. (Gil.) 103; Brannigan v. People, 24 Pac. Rep.
767; People v. Callaghan, 6 Id. 49; State v. Lindsay,
5 Id. 822.

The court erred in giving instruction number 1,
which is a comment on the weight of the evidence, and
argumentative in form.   Thorp v. Geowey, 85 Ill. 612;
Willis v. R'y, 4 Pac. Rep. 121; Brown v. State, 23
Tex. 195, 202; Zimmerman v. Knox, 8 Pac. Rep. 104;
Leadbetter v. State, 21 Tex. App. 344; Payne v. State,
Id. 184; 2 Thomp. on Trs., sec. 2287; Otterback v.
Brown, 2 McArth. 541; Jones v. State, 65 Ga. 506.

The court erred in giving instruction number 4,
which is contrary to law and misleading.  2 Thomp.
on Trs., secs. 2511, 2512; Stark. Ev. [9 Am. Ed.],
sec. 856; People v. Anthony, 56 Cal. 397, 400; Leon-
ard v. Territory, 7 Pac. Rep. 872.

The court erred in giving instruction 6, which
instructs that the jury are judges of everything, not
the law.   2 Thomp. on Trs. 2424; Knowles v. People,
15 Mich. 408, 412; Brown v. R. R., 66 Mo. 588, 600.

The court erred in giving instruction 7, which told
the jury they were the judges of the evidence, when,
as a matter of law, juries are judges of the weight of
the evidence.   Stacey v. Cobbs, 36 Ill. 346; Battersby
v. Abbott, 9 Cal. 565.

VOL. 8 N. M.—32

The court erred in giving instruction 8, which was misleading. Dawson v. State, 62 Miss. 241; Walker v. State, 42 Tex. 360, 369; U. S. v. Gooding, 12 Wheat. 460; Johnson v. State, 21 Tex. App. 368; Turner v. Comm., 86 Pa. St. 54. See, also, Ayer v. State, 21 Tex. App. 399; Walker v. State, 42 Tex. 360; Cunningham v. State, 56 Miss. 269; French v. State, 12 Ind. 670.

The court erred in giving instruction 9, which authorizes the jury to compare facts and circumstances without limiting them to the evidence. 2 Thomp. on Trs., sec. 2500; Cave v. State, 41 Tex. 182; Hunt v. State, 7 Tex. App. 212; Wallace v. State, 9 Id. 299; Turner v. State, 63 Tenn. (4 Lea.) 206; Comm. v. Webster, 5 Cush. 296; 1 Greenlf. Ev. 34.

JOHN P. VICTORY, solicitor general, for the territory.

Unless there is evidence to justify or require it, the court need not give instructions as to lesser degrees of murder. Sharf v. U. S., 156 U. S. 51, and citations; Territory v. Nichols, 3 N. M. 103; Territory v. Young, 2 Id. 93, 104; Territory v. Thomason, 4 N. M. (Gil.) 154; State v. Lane, 64 Mo. 319, 324; State v. Musick, 101 Id. 260; Robinson v. State, 84 Ga. 674; State v. Estep, 44 Kan. 372, 575; O'Brien v. Comm., 86 Ky. 354.

Instruction 1 is not argumentative, nor does it comment on the weight of the evidence. Section 2055, Compiled Laws, is a part of the civil procedure, and this court has doubted whether it applies in criminal cases. Territory v. Franklin, 2 N. M. 307; Territory v. Romine, Id. 114; Faulkner v. Territory, 6 N. M. 464; Trujillo v. Territory, 7 Id. 44.

Instruction 4 is not contrary to law or misleading. It simply means that each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt. Scott

v. State, 19 Tex. App. 325; People v. Anthony, 56 Cal. 397.

Instruction 6 is not erroneous. The jury is the sole judge of the weight and credibility of the witnesses. Pierce v. State, 53 Ga. 365, 369; Skipper v. State, 59 Id. 64; Lane v. Bailey, 47 Barb. (N. Y.) 243; Brown v. R. R., 66 Mo. 588, 600.

A general exception to a charge is not sufficient to bring up for review any specific instruction. Leach v. Hill, 66 N. W. Rep. (Iowa) 69; Bush v. Nichols, 77 Iowa, 171; Austel v. James, 22 S. E. Rep. 953; Ripp v. Hale, 64 N. W. Rep. 454.

### OPINION ON MOTION.

Bantz, J.—On motion of the defendant in this court an order was made directing the clerk of the Fourth district to send up the transcript of the record and proceedings in this case, or show cause why the same should not be done. The clerk has made a return, and that portion which is material to the decision of this matter sets out in substance that the fees allowed for the preparation of the transcript have not been paid or tendered by the defendant. The defendant was convicted of murder in the first degree at the trial in the district court, from which the appeal was taken. Under the statute of the territory an appeal in such case operates as a supersedeas (sec. 2483, Comp. Laws).

MURDER: appeal: failure of clerk to send up transcript.
By section 2476 (Comp. Laws 1884), it is provided, "when an appeal shall be taken which operates as a stay of proceedings, it shall be the duty of the clerk of the district court to make out a transcript of the record in the cause and certify and return the same to the office of the clerk of the supreme court without delay." In section 2477 it is provided, "when an appeal does not operate as a stay of proceedings, such transcript shall be made out, ratified (certified) and returned on the

application of the appellant.'' In these two sections a clear destinction is taken between those causes in which there is a stay of execution, and those in which there is not; in the former the clerk of the district court is required to make out and return the transcript into the clerk's office of this court without delay, but in the latter it is to be made out and returned on the application of the appellant. If there has been a stay of execution, the territory becomes interested in a speedy determination of the appeal, and there is no way in which that appeal can be determined without a transcript before this court. If there has been no supersedeas, the judgment of the court below·is carried into execution against the defendant notwithstanding the appeal. The same question, under like statutory provisions, was passed upon in State ex rel. v. Daily, Clerk, Etc., 45 Mo. 154, and Judge BLISS, speaking for the court, says: ''In civil cases if the appellant fails to see that his transcript is filed, the respondent may produce one and take judgment; but in criminal cases, if it is not sent by the clerk upon supersedeas, according to the requirements of section 16, or not produced by the appellant when there is no supersedeas, according to section 17, I know not how the case will get here, or how the sentence is to be executed. If the·clerk's duty is limited by the ability or willingness of the accused to pay him for the transcript, he need only to procure the allowance of the supersedeas, and then postpone indefinitely or defeat altogether the execution of the sentence. There is a marked distinction in appeals where there is a supersedeas and where there is none.'' ''The duty then of sending up a proper transcript upon supersedeas in a criminal prosecution is imperative, and is not personal to the clerk, without the application of the accused. It becomes essential to the further prosecution of the case and the execution of the judgment in which the accused may have no interest.'' The

mandamus to the clerk was made peremptory. In Territory v. Hicks, 30 Pac. Rep. 872, this court pointed out the distinction to be observed in criminal cases on appeal between those with and those without supersedeas. Our conclusion therefore is that this being an appeal where the execution of the judgment of the court below is stayed, it is the duty of the clerk to make out and return the transcript into the clerk's office of this court without delay, and that the failure or refusal of the appellant to pay for such transcript can not be averred by an excuse for the failure so to do. Though it may have been the long standing practice for appellants in criminal cases to pay for such transcript, we are satisfied that the legislature has so provided as to excuse those who have obtained a stay of execution. As to what may be the right of the clerk in relation to costs in other respects is not necessary to decide.

The rule heretofore granted is made absolute.

Smith, C. J., and Laughlin and Hamilton, JJ., concur.

### OPINION ON THE MERITS.

Hamilton, J.—Scipio Aguilar, the plaintiff in error, was indicted in the district court for the Fourth judicial district, in the county of San Miguel, on the twenty-ninth of September, 1894, for the murder of one Hilario Martinez and Juan Jimes. At the April term, 1895, he was tried in said court for the killing of Juan Jimes, and was discharged by the court. At the April term, 1896, he was tried under the other indictment for the killing of Hilario Martinez, and was found guilty of murder in the first degree. After unsuccessful motions for a new trial and in arrest of judgment, he brings the case here by appeal.

It appears from the record in the case that the defendant on or about the eighteenth of September,

1894, was traveling from a place called "Cochiti," in New Mexico, to his home, in San Miguel county; that while so traveling he came up with Hilario Martinez and Juan Jimes, who were freighters going in the same direction. He traveled with these parties during the remainder of the eighteenth, camped with them during the night, and traveled with them until late in the afternoon of the nineteenth, when they all stopped for dinner. After dinner they separated, the defendant going in the direction of his home, which he reached that night or the next day. Some four days after this the bodies of the two freighters were found dead in their wagons, some miles from the place where the defendant left them, and about four hundred yards from the road. He was never seen with them after leaving them on the evening of the nineteenth. They were never seen after that time until their dead bodies were found. The defendant was arrested, indicted, tried, and convicted, as above stated. It will be seen from this statement of facts that there was no eyewitness of the murder, and that there were no facts whatever developed upon the trial showing the circumstances under which the crime was committed. The killing was established, and the condition in which the bodies were found showed that death was produced by a dangerous weapon; but how, or under what circumstances, or what was done or said by the deceased or the slayer at the time of the homicide, does not appear. At the close of the evidence the court instructed the jury as to murder in the first degree only, and did not charge as to murder in the second or third degrees. In this failure of the court to instruct the jury as to murder in the second and third degrees, it is insisted by the plaintiff, there was error.

Under section 2054 of the Compiled Laws of New Mexico, it is made the duty of the court in all cases,

INSTRUCTIONS. · whether civil or criminal, to instruct the jury on the law of the case, and its failure or refusal so to do shall be sufficient ground for a reversal of the judgment.   It has been held by this court that it is the duty of the district court properly and fully to instruct the jury as to the law in all criminal cases, whether requested so to do or not.   Failure on the part of the court so to instruct is a ground of error.   Territory v. Friday, 8 N. M. 204.   Was it the duty of the district court, under the facts developed in this case, to charge the jury upon any other degree of murder than the first?   "Murder" is defined by our statute to be the unlawful killing of a human being, with malice aforethought, either express or implied.   Express malice is a deliberate intention unlawfully to take away human life.   Malice is implied when no considerable provocation appears, or when all the circumstances of the killing show a wicked and malignant heart.   Under our statute, murder is divided into three degrees:   First, all murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, any felony, or perpetrated from a deliberate and premeditated design unlawfully and maliciously to effect the death of any human being, or perpetrated by any act greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life, is murder in the first degree; second, all murder which shall be perpetrated, without a design to effect death, by a person while engaged in the commission of a misdemeanor, or which shall be perpetrated in the heat of passion, without a design to effect death, but in a cruel or unusual manner, or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide, or which shall be perpetrated unnecessarily,

either while resisting an attempt by the person killed to commit any offense against the person or property, or after such attempt shall have failed, shall be deemed murder in the second degree; third, every killing of a human being by the act, procurement or culpable negligence of another, which is not murder in the first or second degree, is murder in the third degree. Every unlawful killing of a human being, with malice aforethought, is murder, either in the first or second degree. Under the facts in this case, it is only necessary to consider murder in the first and second degrees. The distinctive features which separate murder in the first from murder in the second degree are deliberation and premeditation, which are present in the first, and absent in the second. In both these degrees the killing must be unlawful, and in both it must be done with malice aforethought; but the two essential elements which constitute murder in the first degree, and which are not present in the second, are that premeditation and deliberation upon the acts done in the commission of a crime, which aggravate the offense, and remove all ideas of excuse or justification, and elevate the crime from one of murder in the second to one of murder in the first degree. If the murder is perpetrated by means of poison, lying in wait, torture, or in any attempt to commit a felony, or by an act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life, the law presumes that the acts by which the murder has been thus committed have been done with that premeditation and deliberation which constitute the crime murder in the first degree. Where a person has taken the life of another by either of these methods, the law has said that the very act of taking life in that form contains in itself the mental requirements of premeditation and deliberation, making it murder in the first degree without the proof of any other facts. In a trial for murder com-

mitted by one of these methods, the inquiry is as to whether the killing was committed by a method thus inhibited by the statute, and if it was so committed the court and jury may find from such killing that it was done with deliberation and premeditation. If, however, it is shown that the murder was committed in any other manner, then there is no presumption of law or fact, against the defendant, that the killing was done with deliberation and premeditation. "But a mere killing with such weapon, with nothing more, is not murder in the first degree. And where the statute requires a more distinct premeditation, or more intense malice, the verdict can only be for the second degree." 2 Bish. New Crim. Proc., sec. 602. While the death and the weapons or means used to produce death, may, in and of themselves, be sufficient to show murder, yet alone they raise no presumption as to the degree of the murder. If any presumption as to the degree is to be raised from these facts, it is the second degree; and, if the territory would lift the crime from this to the higher degree, it can do so only by the proof of such additional facts and circumstances in relation to the crime as will permit the court to charge, and the jury to determine, that it was done with that deliberation and premeditation which will make it murder in the first degree. If no such facts and circumstances are shown, it will be the duty of the court to so instruct, and the jury to find a verdict in the second, or, it may be, in a lower, degree. KERR, Hom., p. 99, in discussing this subject, says: "While the presumptions of malice are necessarily presumptions of murder, because all killing is murder, yet a presumption of malice, either from the act of killing, the weapon or means used, raises no presumption as to the degree of murder, and consequently no presumption that the homicide is more than the lowest degree of malicious killing, which is usually murder in the second degree. A higher

degree of guilt can be established only by additional
proof of previous deliberation, premeditation, or reflec-
tion." While the rule thus laid down by Mr. Kerr is
no doubt true in respect to the necessity of proof of
deliberation and premeditation to raise the murder from
the second to the first degree, and that malice is a
necessary element of murder, we can not agree that
malice is to be regarded simply as a presumption of
law. It is an element to be found from the facts by the
jury. Malice is not a presumption of law arising from
the fact of the killing, though the killing may be
sufficient to justify the jury in finding malice. Ter-
ritory v. Lucero, decided at this term. Stokes v.
People, 53 N. Y. 164; Milton v. State, 6 Neb.
136; People v. Belencia, 21 Cal. 544; State v.
Turner, Wright, 26; Com. v. Drum, 58 Pa. St. 9;
Dains v. State, 2 Humph. 439; Hamby v. State, 36 Tex.
523; Territory v. Romine, 2 N. M. 114. The burden
of proof to establish the guilt of the defendant to the
satisfaction of the jury, beyond a reasonable doubt,
never shifts from the territory to the defendant, but
remains with the territory throughout the trial; and,
if the territory would convict the defendant of the
highest grade of homicide, it can do so only by showing
either that it was committed by that means from which
the law presumes deliberation and premeditation, as if
done by poisoning, lying in wait, etc., or by showing
that the crime was committed under such circumstances
that the jury, under a proper charge from the court,
may find as a fact that it was done with deliberation
and premeditation. Coffin v. U. S., 156 U. S. 432,
452–461, 15 Sup. Ct. 394; Davis v. U. S., 160 U. S.
469, 16 Sup. Ct. 353. In the case of State v.
Payne, 10 Wash. 553, 39 Pac. Rep. 159, the court, in
discussing the presumptions which arise from the proof
of killing, say: "The premeditation required to consti-
stute murder in the first degree is a distinct element,

having no relation whatever to the fact of the killing; and for that reason all the authorities hold that no presumption of murder in the first degree flows from the proof of the killing; but as to murder in the second degree the reasons which induced the holding at common law still have force.'' In the case of Stokes v. People, 53 N. Y. 164, after discussing this question of the different degrees of murder, the court use this language: ''The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court. ' * * * Under the statute it is obvious that mere proof that one has been deprived of life by the act of another utterly fails to show the class of the homicide, under the statute.''

The means by which the killing was effected in the case under consideration were not such as to bring the case within that class where deliberation and premeditation can be gathered. Thus, it was not done by poisoning, lying in wait, etc.; but, as charged in the indictment and shown in the evidence, it was committed under that clause of the statute which makes it necessary to prove deliberation and premeditation. It was therefore incumbent upon the territory to prove, not only the naked fact of killing, and that it was done with a dangerous weapon or instrument, but other facts and circumstances from which deliberation and premeditation could be inferred. If no proof was offered showing facts and circumstances from which such deliberation and premeditation could be inferred, it was the duty of the court to charge as to murder in the second degree. The facts, as disclosed by the record, show that the defendant, on the eighteenth of September, 1894, was traveling in his wagon, drawn by two horses, from a place called ''Cochiti,'' in New Mexico, to his home, at Alamosita, in San Miguel county. He had

MURDER:
   instruction.

no load in his wagon, except his bed, wrapped up in a wagon sheet, a box with provisions, cooking utensils, harness, a rifle and such other things as he needed on his journey. Some time during the day of the eighteenth of September, he came up with the deceased and another boy, who were each driving a freight team, having four horses to each wagon. The wagons driven by the deceased were loaded with flour and other articles. The defendant and the two young men traveled along together during the remainder of the day of the eighteenth, and camped that night, and then traveled together until late in the afternoon of the following day, when they all went into camp near a place called "Ojito de. las Conchas" for dinner. After they had gotten dinner and fed their horses, they hitched their teams and started out. The defendant bade the young men "good day," and drove ahead, in the direction of his home, where he arrived that night or the next day. He never saw the two young men after that, and was never seen with them. Some four days after this the dead bodies of the two boys were found several miles from the place where they and the defendant had taken dinner and separated on the evening of the nineteenth. The bodies were found one in each wagon, and were between three hundred and four hundred yards from the road. The heads and faces were badly cut and beaten up, showing that death had been caused by cuts or blows. They were in such condition at the time they were discovered that it was difficult to tell exactly the nature of the wounds by which death was produced. An ax belonging to one of them was found in one of the wagons with blood on it. Some of the sacks of flour were gone from one of the wagons. There is no direct evidence that the defendant ever saw the deceased after leaving them on the evening of the nineteenth. The two boys were not seen from that time until their dead

bodies were found, some four days afterwards. The record fails utterly to show how or under what circumstances the killing occurred. The record fails to show any threats, difficulty, or feeling of ill will between the deceased and the defendant, or any of the facts surrounding the commission of the homicide. Under this state of facts, was the court below correct in giving an instruction only of murder in the first degree? We think not. While, from the fact of the killing, and the nature of the instrument used to produce it, it might be found that the killing was unlawfully done, and that it was done with malice aforethought, yet have we the right, from these facts alone, unaccompanied by any other circumstances, to presume that it was done with that deliberation and premeditation which will make it murder in the first degree? If we can indulge in any presumption, we have more right to presume that the killing was done under such circumstances as would make it justifiable homicide, because nothing is presumed against the innocence of the accused. Might we not as well presume that the deceased brought on a difficulty resulting in his death? Or may we not also presume that the deceased attacked the slayer under such circumstances as would make the killing justifiable homicide? How are we to know, in the absence of any proof as to the circumstances of the killing, how it was perpetrated? In the absence of any proof upon the subject, must we assume that it was the highest degree of murder? We do not so understand the law. To presume the guilt of the defendant of murder in the first degree, in the absence of proof to establish it, is in conflict with that presumption of innocence which remains with the defendant until overcome by proof which establishes his guilt beyond a reasonable doubt. From the simple fact of the killing, without any proof as to any of the circumstances under which it was done, we have no more right to assume that it was

murder in the first degree than to assume that it was murder in the second degree or justifiable homicide.

Other grounds of error have been assigned by the appellant for reversal, among which is the action of the court in permitting testimony to be offered by the territory as to the contents of a certain letter supposed to have been written by the defendant. While we do not agree with the court below that a foundation was sufficiently laid to permit some of the witnesses to testify as to the contents of this letter, we deem it unnecessary to consider that question in the case. We think the court, under the state of facts presented in the record, should have given an instruction for murder in the second degree, and its failure to do so is error, for which the case must be reversed and remanded, and new trial granted, and it is so ordered.

COLLIER and BANTZ, JJ., concur. LAUGHLIN, J., dissents.