282 P.2d 1105

V. L. GERRARD, Plaintiff and Appellant,

v.

HARVEY & NEWMAN DRILLING COMPANY, Employer and Employers Casualty Company, Insurer, Defendants and Appellees.

No. 5852.

Supreme Court of New Mexico.
April 25, 1955.

Brown & Wood, Farmington, for appellant.

Tansey & Brown, Farmington, for appellees.

KIKER, Justice.

Plaintiff's action is under the workmen's compensation act. In the complaint it was alleged that plaintiff was injured on August 9, 1953 while working for defendant and in the course of his employment. Plaintiff asserted that at the time of the alleged injury he was a derrick man and was making a pipe connection on the rig; and that the alleged injury caused plaintiff total, permanent disability, necessitating medical expense in excess of seven hundred dollars.

For answer defendant admitted the employment of plaintiff on the date of the alleged injury but denied all other allegations of plaintiff's claim.

Trial was had to a jury. The only form of verdict submitted to the jury consisted of four interrogatories. The court told the jury that if the first interrogatory should be answered in the negative, it would not be necessary to answer the others. The first interrogatory was: "Do you find from a preponderance of the evidence that the plaintiff is now disabled as the result of an accident which occurred while working for Harvey & Newman Drilling Co. on August 9, 1953?" The second interrogatory asked the percentage of the present disability. The third asked whether disability at the time of trial was due entirely to the acci·

dent which occurred while working for defendant. The fourth interrogatory was to be answered only in case the answer to the third was in the negative and in that event the jury was called upon to state what percentage of disability at the time of trial was attributable to the accident of August 9, 1953.

The jury answered the first of the interrogatories in the negative so that it was unnecessary to answer any of the others.

The records show that after the verdict of the jury, being the answer to the first of the four interrogatories, was read, the court asked the attorney for plaintiff if he wished the jury polled, and the answer was in the negative. Thereupon the court excused the jury but before they had left the box, plaintiff's attorney in the presence of defendants' attorney, at the bench and in an undertone requested that the court ask the jury if it was understood that by the verdict the claimant was being allowed no compensation. After defendants' attorney agreed that the court should submit this question to each juror individually, this was done, the court asking "Is it your understanding that he should not be compensated?"

All jurors except one answered "Yes, sir"; the other juror answered "I think so."

Judgment was entered for defendant and plaintiff appealed.

Plaintiff's testimony was to the effect that at the time of his injury the breakout cathead clutch of the oil rig on which he was working stuck, with the result that some tongs were jerked loose from a pipe and struck claimant across the back. Plaintiff's brother, working for the defendants at the same time and place, gave testimony supporting that of the claimant. A witness for defendant testified to the effect that the tongs were jerked loose but that he did not see them strike claimant or any other person though he was in a position to see whether anyone was struck. The same witness for defendant testified further that when the tongs came loose claimant stepped off the platform rather quickly and then stepped back.

Each of the parties had an orthopedic surgeon for a witness.

There was little difference in the opinions of these doctors as to the fact that plaintiff had been injured at some time. Neither of them could approximate the date of the injury which it was said must have occurred more than three months before the examination of either. The difference in their opinions was related almost entirely to treatment which might relieve plaintiff's condition.

The doctors agreed that plaintiff should not do heavy work in oil fields—that is that he should not do the kind of work he was doing at the time he claimed that he was injured.

Plaintiff's assignments of error raise no question except as to the giving of two instructions by the court, the refusal of the court to give one instruction submitted by plaintiff and the assertion that the verdict is not supported by substantial evidence.

The court gave the jury instruction numbered 5 which reads as follows (Tr. 10):

"You are instructed that the Workmen's Compensation Act of the State of New Mexico provides for the payment of compensation to those employees covered by the act who by reason of accidental injury sustained in the course of their employment become disabled. 'Total Disability' is presumed to have occurred when both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, have been lost. This definition of total disability is not exclusive of other cases of total disability. Total disability may occur by reason of other injuries not specified in the act when under the evidence the claimant can fairly be said to be totally disabled. Total disability means the inability of a workman to obtain and retain gainful employment in work for which he is fitted from the standpoint of the background, experience and education of the workman."

The interrogatory answered by the jury in the negative upon which the judgment for defendant is based reads as follows (Tr. 22):

"1. Do you find from a preponderance of the evidence that the plaintiff is now disabled as a result of an accident which occurred while working for Harvey & Newman Drilling Co. on August 9, 1953?

"Answer *Yes* or *No,* as you shall find. *No.*"

To instruction numbered 5 plaintiff, by his attorney, took exception as follows (Tr. 116–17):

"In behalf of plaintiff I object to Instruction No. 5 and more particularly to the language reading as follows: 'Total disability is presumed to have occurred when both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, have been lost.' for the reason that there are no facts in this case to support such an instruction, and for the further reason that such language may be construed by the members of the jury and the plaintiff be prejudiced thereby."

The objection should have been sufficient to call to the attention of the court that it was about to fall into error and is a proper basis for the consideration in this Court, under proper assignment of error, of the propriety of the given instruction.

By assignment of error, plaintiff attacks instruction numbered 5 given by the court,

as introducing a false issue in the case by including therein the sentence previously quoted relating to the loss of hands, arms, feet or eyes.

It is not quite accurate to say that the instruction raised a false issue because there was no basis for any decision about loss of hands, arms, feet or eyes. An issue has been defined by this Court in Paulos v. Janetakos, 46 N.M. 390, 129 P.2d 636, 638, 142 A.L.R. 1237, as follows:

"The matters in issue, which are concluded by the judgment, are the ultimate facts as developed by the pleadings and the evidence. From Smith v. Town of Ontario, C.C., 4 F. 386, 390, 18 Blatchf. 454, 457, we quote on this subject: 'The matter in issue has been defined in a case of leading authority as "that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading." King v. Chase, 15 N.H. 9, (41 Am.Dec. 675). The issues presented by the pleadings may be modified by the proceedings upon the trial, as where a defense is withdrawn from consideration, or where a count in declaration is abandoned. However this may be, the matter in issue or the point in controversy is that ultimate fact or state of facts in dispute upon which the verdict or finding is predicated.' This case, together with King v. Chase,

15 N.H. 9, 41 Am.Dec. 675, is referred to with apparent approval in Reynolds v. Stockton, 140 U.S. 254, 270, 11 S.Ct. 773, 35 L.Ed. 464."

In the case of Majors v. Kohlhousen, 33 N.M. 529, 270 P. 896, there is clearly the submission by instruction of a false issue to the jury. In that case plaintiff pleaded a contract of employment to find a purchaser for certain real estate, alleging that he found the purchaser and that the property was accordingly sold and that he had earned his commission.

The court gave the jury an instruction in substance that if it should be found from the evidence that plaintiff was engaged in the real estate business and that defendant was offering the real estate for sale and that she employed the plaintiff to aid and assist her in effecting a sale either by previous authority or acceptance of plaintiff's agency and the adoption of his acts and that plaintiff did faithfully occupy his time and render his services in so aiding defendant to effect a sale, then plaintiff would be entitled to recover a reasonable remuneration. To this instruction defendant objected at the trial and after verdict for plaintiff, defendant appealed. One point only was considered in this Court. The holding was that the instruction just mentioned submitted to the jury a false issue because plaintiff's right to recover, as alleged in the pleadings, rested upon his finding the purchaser and not upon assistance he may have

rendered defendant in selling to some purchaser found in some other manner. The judgment of the lower court was reversed.

It cannot be said that the scheduled injuries mentioned in instruction numbered 5 are merely illustrative for the reason that they do not illustrate anything. The instruction makes no comparison between these injuries and any other kind of injury that might be total and permanent, and no other of the instructions makes any such comparison. The instruction is in no way applied to the facts in the case. Reading the instruction and bearing in mind its contents it seems necessary to look at the other instructions given by the court, and having done so, no applied instruction appears in the case. The jury is left to speculate as to what might have been meant in this case by the declaration of the court as to loss of both eyes or both hands or both arms or both feet or both legs or any two thereof. The jury may have concluded, as far as we know, that something like complete paralysis would be necessary to equal or approximate any such loss as those specified in instruction numbered 5. The worth of the instruction is in no way aided by the inclusion therein of the words,

"* * * Total disability may occur by reason of other injuries not specified in the act when under the evidence the claimant can fairly be said to be totally disabled."

These words amount to saying that total disability exists where there is complete disability. They mean nothing more. Within the definition just above given of an issue, it cannot be said that a false issue was given to the jury but the instruction, we think, is erroneous and so prejudicial to the plaintiff as to require the reversal of this case.

■ The purpose of instructions is to enlighten the jury. The instructions should call the attention of the jury to the specific issues which it must determine and should embrace only statements of law to be applied in the examination and determination of the issue. No statement should be included in any instruction which is likely to confuse or mislead any members of the jury.

In this case there was no claim that the plaintiff, Gerrard was blind in both eyes or that he had lost both hands or both arms or both feet or both legs or any two thereof. It was wholly unnecessary, therefore, for the court to place before the jury a declaration that total disability is presumed when the loss of any two of such members has been sustained. So declaring to the jury was likely to lead members of that body to believe that, though injured, unless the disabling occurrence had left plaintiff in a condition as difficult as to locomotion as if he had lost both feet or both legs; or impossible of use as if he had lost both eyes

or both arms, he could not claim permanent disability. This, of course, is not true.

In several decisions, this court has declared that the trial court should state the law as applicable to the particular facts in issue, as shown by the evidence; and that mere abstract propositions of law and mere statements of law in general terms, even though correct, should not be given unless made applicable to the issues in the case at bar. Martin v. La Motte, 55 N.M. 579, 237 P.2d 923.

This court has taken the position that whether there is total and permanent disability must be determined from the facts in each case coming before the court. Helms v. New Mexico Ore Processing Co., 50 N.M. 243, 175 P.2d 395.

In the Helms case Mr. Justice Brice, concurring specially, said that it was not necessary in that case to construe the phrase permanent and total disability and added that the question had been posed before the court in at least three cases without a definition being given because in each it was unnecessary to do so. In that concurring opinion there is a quotation from a Colorado case, Globe Indemnity Co. v. Industrial Commission of Colorado, 67 Colo. 526, 186 P. 522, which announces the position taken by this court with reference to each case depending upon its peculiar facts for determination as to whether there is total and permanent disability. So far as we are aware there has been no material departure in Colorado from the position quoted in the Helms case.

The appellee goes further and asserts that even if instruction numbered 5 is in part wrong it could not have prejudiced or influenced the jury in its verdict for the reason that the jury did not reach the point of considering the percentage of disability, total or partial. We cannot agree to this proposition. We think appellee is inaccurate in the assertion so made. What the jury did say in answer to the first interrogatory was that at the time of the trial plaintiff was suffering from no injury. There was no determination by the jury as to whether plaintiff was injured at the time alleged in the claim. The interrogatory answered by the jury spoke only as of the day of the return of the verdict. Whether plaintiff was injured on the day alleged in the claim and thereafter because of the injury was incapacitated for more than seven days at any time was not determined by the jury. The interrogatory submitted gave no opportunity for any such determination.

The date of the alleged injury was August 9, 1953. The date the verdict was filed in the case was April 12, 1954. What the experiences of plaintiff, claimant, were during that period of time is not revealed by the verdict.

Instructions must be considered as a whole and if the law is fairly presented by the whole, that is sufficient. Hubert v. American Surety Co., 26 N.M. 365, 192 P. 487; Snodgrass v. Turner Tourist Hotels Inc., 45 N.M. 50, 109 P.2d 775; State v. Beal, 48 N.M. 84, 146 P.2d 175.

Instruction numbered 6 given by the court deals again with total disability. It contains a general declaration of law, declaring that such disability does not necessarily contemplate the entire destruction of earning capacity, but that "it is related to ability of plaintiff to compete in the labor market and to obtain and retain gainful employment."

The quotation taken by this court in the opinion by J. Hudspeth in Helms v. New Mexico Ore Processing Co., supra [50 N.M. 243, 175 P.2d 399], from a Pennsylvania case, Allen v. Dravo Corporation, 149 Pa.Super. 188, 27 A.2d 491, begins with these words:

"We have several times criticized the expression 'cannot compete in the open labor market'. It has no place in the workmen's compensation law." [50 N.M. 243, 175 P.2d 399.]

No other guide was given to the jury for the determination as to total and permanent disability than in instructions numbered 5 and 6; but the jury was told in instruction numbered 8, that if they did not find claimant to be totally disabled then they should consider whether at the time of trial he was partially disabled as a result of accidental injury.

The vital points for determination in this case were:

(1) Did the plaintiff suffer an accident and injury on August 9, 1953 in the course of his employment for the defendant; (2) If injured on that date, was plaintiff thereafter at any time incapacitated for more than seven days as the result of the injury sustained; (3) If injured at that time was plaintiff's disability total or partial; (4) If plaintiff was injured at that time so that he was incapacitated for more than seven days but not permanently injured, for what length of time did his incapacity, if any, last; (5) If plaintiff was injured at that time and suffered permanent but not total incapacity thereby, what percentage of disability did he suffer.

The very first of the questions suggested is at the foundation of any determination in this case. It has not been submitted to the jury, so has not been answered.

Plaintiff assigned error in the giving of the court's instruction numbered 9 which deals with notice. The instruction is as follows (Tr. 11):

"Actual notice of a compensable accidental injury under the compensation act of New Mexico implies more than casual information. It means that the foreman in charge of the work

being done by the plaintiff at the time of his claimed injury had actual personal knowledge of the accident, and that as a result of the accident claimant was incapable of performing the tasks of a workman for a period of more than seven days."

Plaintiff argues that the instruction numbered 9 injected a false issue into the case because no issue as to notice was made by the pleadings and because the evidence in the case does not justify an instruction as to notice.

The defendant urges that the instruction is perfectly proper and says that the evidence does not show that the "man who was plaintiff's boss" was present at the time it is claimed the accident occurred. What man is referred to as "plaintiff's boss" is not clear. It does appear in evidence, however, that plaintiff was working as a roustabout on shift for another driller and that the driller in charge at the time was the foreman of the workers in the drilling crew.

No question of notice to the defendant was raised in any way in the pleadings or the evidence and it was a mistake to give the jury any instruction about notice. It was particularly a mistake to give an instruction which mixes into directions about notice of an injury, a declaration about the results of the injury. Members of the jury may have been ied by instruction numbered 9 to believe that if plaintiff was not actually incapacitated immediately after he was injured and did not remain so for at least seven days, there was no notice and could be no resulting compensable injury. Instruction numbered 9 was prejudicially erroneous.

Instruction numbered 9 consists of abstract declarations of matters of law. There is no applied instruction in the transcript which could lead the jury to a consideration of the primary question for determination in the case. That question, as has been said above, is whether plaintiff was injured at the time alleged in his complaint. The jury was not told in the instructions that it must be determined whether plaintiff was injured at the time alleged in the complaint. Without such a determination the jury could not reach a proper conclusion as to any other facts in question.

Ch. 8 of the Session Laws of 1884 in Section 1, C.L. '97, § 2992, N.M.S.A.1915, § 2794; N.M.S.A.1929, § 70–102, provides:

"Upon the trial of any case, either civil or criminal, in the district courts held within and for the various counties of the state, all instructions to the jury asked by either party, whether given or refused, shall be in writing, and all instructions given by the court at the request of either party or upon its own motion, shall be in writing; and it is hereby made the duty of the court

in all cases, whether civil or criminal, to instruct the jury as to the law in the case, and a failure or refusal so to do shall be sufficient ground for reversal of the judgment by the supreme court upon appeal or writ of error: *Provided, however*, that the parties to the suit or their attorneys may waive upon the record the instructions in writing."

Ch. 73 of the Session Laws of 1897, § 128, C.L. '97, § 2685; N.M.S.A.1915, § 2793; N.M.S.A.1929, § 70–101; provided:

"When the evidence is concluded, and before the cause is argued or submitted to the jury or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the cause, which shall be in writing and shall be given or refused. The court may, of its own motion, give like instructions in writing, and all instructions shall be given by the court before argument and shall be carried by the jury to their room for their guidance to a correct verdict according to the law and the evidence."

Of the duty of the trial court under the 1884 statute it was held that in a trial for murder, if there were any evidence bringing the case within any degree, it was the duty of the court to charge regarding such degree and failure to do so was reversible error. Territory v. Friday, 8 N.M. 204, 42 P. 62; Aguilar v. Territory, 8 N.M. 496, 46

P. 342; Territory v. Baca, 11 N.M. 559, 71 P. 460.

After passage of the code of civil procedure the court held that since its adoption the court was under no obligation to instruct the jury unless requested so to do and the decisions under this section were no longer applicable.

In Palatine Ins. Co. v. Santa Fe Mercantile Co., 13 N.M. 241, 82 P. 363, 366, Parker, J., writing the opinion, said:

"Where any obligation rests upon the court to instruct the jury as to the law of the case, it is probably true that the jury may not be referred to the pleadings to ascertain the issues. It is the duty of the court to state them. But under our Code of Civil Procedure no obligation rests upon the court to instruct the jury unless requested. Subdivision 128, § 2685, Comp.Laws 1897. This section is copied from the Missouri Code (section 2188, Rev.St. Mo.1889), where it has been likewise held that no obligation rests upon the court in a civil case to instruct the jury unless requested. Farmer v. Farmer, 129 Mo. 530, 31 S.W. 926. No complaint is made that the instructions are erroneous, but rather that they are incomplete. It was nondirection, and not misdirection. See, also, on this subject, 1 Blashfield Ins. to Juries, § 127; 2 Thomp. on Trials, § 2341. In the latter it is said: 'It is, then, a general rule of

procedure, subject in this country to a few statutory innovations, that mere nondirection, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused.' See, also, Stuckey v. Fritsche, 77 Wis. 329, 46 N.W. 59; Womack v. Circle, 29 Grat., Va., 192, 208. It may be well to notice that this is a departure from the requirements of the former statute (section 2992, Comp. Laws 1897) and the decisions of this court thereunder; the same being no longer operative in this regard since the adoption of the Code."

See also King v. Tabor, 15 N.M. 488, 110 P. 601.

The compiled laws of 1897 and N.M.S.A. 1915 and N.M.S.A.1929 were compilations and it cannot be said of any of them that everything in the books was law. If there were existing statutes, about which it seems there was any possibility of force and validity, the compilers included them. The repealing and saving clause of N.M.S.A.1915, among other things, states:

"In the event that any section or part of a section hereof is inconsistent with or conflicts with any other section or part of a section, reference may be had, in construing the same, to the date of the passage of the original acts from which said sections were taken." Code 1915, note following § 5901.

The cases just above cited show that consideration was given to the latest statute in determining the duty of the court as to instructions.

We have again changed by the adoption of the Rules of Civil Procedure. Rule 51 (a) provides:

"(a) *Duty To Instruct.* In all cases, civil or criminal, the court shall instruct the jury regarding the law applicable to the facts in the cause, unless such instructions be waived by the parties."

This section places litigants of the present day in the same position as were litigants under the act of 1884 (supra).

Rule 51(g) provides as follows:

"(g) *Error In Instructions—Preservation.* For the preservation of any error in the charge, objection must be made or exception taken to any instruction given; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury. Reasonable opportunity shall be afforded counsel so to object, except or tender instructions."

Both of these sections of Rule 51 should be read together and must be reconciled if possible. If subsection g is to be taken to mean that before the failure of the trial court to give any instructions at all can be available in this court, there must be submitted by the party desiring instructions a

correct instruction or instructions before retirement of the jury, then subsection a of the rule must be utterly useless. The two subsections can only be reconciled by a holding that it is the duty of the court at every trial to give to the jury the fundamental law applicable to the facts in the case and that unless waived by the parties, instructions to that extent at least, must be given whether requested or not; and further that if incidental questions arise in the case, as almost always occurs in the trial of a case, the court need not instruct on such incidental questions unless request be made, in writing, before the jury retires. To illustrate: if, in a homicide case, the facts presented were such that the defendant might be convicted of murder in the first degree, or the second degree or for voluntary manslaughter, as the jury might determine, then under (a) of rule 51 it is the duty of the court, whether requested so to do or not, to instruct the jury as to each of said degrees. Failure to do so would offend against subsection a. To the contrary, however, if threats by either deceased or the defendant should be shown by the evidence, the burden would not rest on the court to discuss threats unless requested by defendant in writing before the retirement of the jury. If, in the trial of either a civil or criminal case, expert witnesses give testimony, medical men for instance, the burden would not rest upon the court to instruct the jury as to the weight to be given to such testimony unless before retirement of the jury, some party to the litigation should make request of the court so to do.

Illustrations of the distinction between the obligations on the court under subsection a of rule 51 and under subsection g of the rule could be multiplied but we think it unnecessary to go further.

In this case, as already said more than once, the fundamental question was whether plaintiff was injured in course of his employment for defendant on the day alleged in the complaint. The trial court, inadvertently doubtless, failed to give the jury an instruction, or an interrogatory, covering that fundamental issue. The omission is fundamentally erroneous and it is not to be excused because of the failure of counsel to make a request covering that fundamental issue.

Bearing in mind that the instructions must be read as a whole, when it is determined that instructions numbered 5 and 9 were erroneous it became necessary to consider the other instructions to determine whether being considered as a whole, the case be properly presented to the jury. The instructions taken as a whole still show that there was never submitted to the jury the fundamental question as to any injury of the claimant at the time charged in his claim.

It must be said that the court's attention was not directed by defendant to any of the

matters in this opinion discussed except as we have shown as to instructions numbered 5 and 9. If proper objections had been made, exceptions to instructions properly stated, the court would doubtless have avoided the error into which it fell, but error there was; and this court has inherent power to properly protect the fundamental rights of litigants in every case, even though omissions may not have been called by counsel to the attention of the trial court. State v. Garcia, 19 N.M. 414, 143 P. 1012; see also State v. Diamond, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527; Schaefer v. Whitson, 32 N.M. 481, 259 P. 618; Springer Ditch Co. v. Wright, 31 N.M. 457, 247 P. 270; Thwaits v. Kennecott Copper Corp., Chino Mines Div., 52 N.M. 107, 192 P.2d 553.

In this case that power should be exercised. It follows that the judgment should be reversed with directions to grant a new trial.

It is so ordered.

SADLER and McGHEE, JJ., dissent.

LUJAN, Justice (specially concurring).

In so far as the opinion of Mr. Justice KIKER rests a reversal and award of a new trial on error in the court's instruction No. 5, objected to at the time by plaintiff, enumerating instances of scheduled injuries amounting to total disability, I concur.

Since the plaintiff's injury was not of that kind or type, I am unable to rid myself of a feeling that giving the instruction tended to confuse the jury and, hence, resulted in prejudice to the plaintiff. I do not feel the facts of this case warrant application of the doctrine of fundamental error. But for the reason stated, I concur in the award of a new trial.

COMPTON, C. J., concurs.